Good morning, Your Honors. David Walford and Edwin Duncan appearing for the appellants. With the Court's permission, may I reserve approximately five minutes of my time for rebuttal? Yes, please keep your eye on your clock. I will. Thank you, Your Honor. Your Honor, this case involves a breach of contract, bad faith, and declaratory relief action. I would like to address initially what I believe to be the two key issues in the case. That is, was MBM added to this policy? And when the policy was non-renewed, did they receive either contract notice or common law notice? That liability had been eliminated. Does that mean you're not planning on discussing punitive damages? Oh, yes. Oh, yes. I'm going to talk about that immediately. I believe that that is one of the factors of reprehensibility, and I will also be talking about the issue of grant fees. I'll move right to punitive damages. This Court's decision in Southern Union Company v. Irvine, I believe there were three Can we just back up? Can we back up to what you said you were going to argue, but now aren't, just for a minute? Okay. I know what the record says about the addition, adding him to the record. What I'm very confused about is that the district court and you keep, still keep arguing about whether he was, quote, a mortgagee insured, relying on this language about in Section 1 of the policy that says something about everything in this policy applies to mortgages. Why does any of that matter if he was, in fact, added to the policy? The reason that it matters is because it creates two grounds upon which notices are given. Okay. But it wouldn't matter. Forget the notice, though, but it also comes up at different points, too, as to whether the standing argument and the issue about who was the, at various junctures, it becomes relevant whether this person is an insured. Correct. And do we need to worry about this mortgagee insured idea at all if the, if he was, in fact, added to the policy in his own name? No. For any purpose? Well, it's my belief that we don't want to go ahead and give up a basis for coverage, if that's what you're asking. We do believe that the Section 2 is. . . Not if you ruled in my favor. Well, that is. . . I understand that. But I'm just wondering whether there is a separate role for this mortgagee insured idea. I believe there is, and I'll tell you why. Okay. Okay. This particular policy was a business liability policy. It incorporated all provisions into Section 1 in the mortgagee coverage. The mortgagee coverage in this case is very broad in addition to incorporating liability. I believe that there is a separate and independent ground. Well, if it's separate and independent, I don't care. I mean, that's what I'm trying to find out. Is it separate and independent, or is it necessary at some juncture of the analysis, even if the person was added to the policy, the company was itself added to the policy in its own name? I believe that if that fact, and I believe it was proved, is in fact adopted and was adopted by the district court. Well, it sort of was and it sort of wasn't. That's what confused me, because at various points she goes back to this mortgagee insured idea, even though she accepted the fact that he was added to the policy for notice purposes, and I'm trying to understand why. Because I believe the distinction was hammered home by Allstate that he wasn't added to the policy, and therefore he was not entitled to notice. All right, but she said he was added to the policy and he wasn't entitled to notice, but she still went through the mortgagee insured. The reason I'm asking this is that I don't find the mortgagee insured idea all that strong, but if he's in the policy, he's in the policy. I don't know why we're worrying about it. Your answer is we don't have to worry about it? My answer is, is that I don't want to go ahead and waive coverage that I believe That's not what I'm asking you, and it would be nice if you answered the question. I'm asking you, I understand you're making alternative arguments, but if we accept the first, do we need to get to the second for any purpose? No. All right. That's what I want to know. Okay. Now do you want to finish your answer on punitive damages? Sorry for being so confused. Let me move to punitive damages, which I believe I have focused on in the Southern Union Irvine case. I believe this court's decision in that case, and obviously Judge Reinhart wrote on the opinion, concurring opinion, Judge Fernandez wrote an opinion, and Judge Noonan wrote an opinion, and it is my belief that that is the last published word on punitive damages in the Ninth Circuit. As I understand the position that this court took is that there is no bright line to punitive damages. When a constitutional challenge is made, the court considers the factors announced in Campbell v. State Farm, but if you read the three opinions, particularly the concurring opinion of Judge Reinhart and the dissent of Judge Noonan, the sense that I get is that the Ninth Circuit is going to go ahead and look at a constitutional challenge de novo, and the factors that it's going to consider are some of the but it's also going to consider, if you look at Judge Reinhart's concurrence, the proportionality of the damages, and it's also going to consider what is sufficient in terms of a punitive damage award to deter and punish the conduct, and I believe that that's where I believe Judge Snyder may have erred, and this is my reason. In reading her decision reducing punitive damages from $3 million to $2 million, she was apparently assuming that all state could not engage in this misconduct hereafter because the old policy, AP 9700, was no longer used. The basis of the punitive damages, the reprehensibility and the what we contend unlawful claims handling practices was the evidence that we introduced to her to substantiate a substantial punitive damage award. It makes no difference that AU 9700 is no longer used. The real issue is whether all state will be deterred from engaging in the unlawful conduct and the bad faith conduct and the fraudulent conduct that we allege, and I believe proved, by reducing the punitive damages from $3 million to $2 million. Let me talk to you about the standard of review for a second. So Southern Union was a case where there was an excessiveness challenge, right? Yes. In other words, and you're talking about kind of the flip side of that. In other words, you're challenging the district judge's reduction of the punitive damages. Yes, Your Honor. And what you're saying is that it was based on what you contend to be a mistaken belief that this wasn't going to happen again or there wasn't going to be recidivism or whatever. That particular finding, wasn't that a factual finding? It was. You say it's an erroneous factual finding, but it was a factual finding. Yes. But aren't the factual findings that underlie these punitive damages determinations reviewed for clear error? Yes. Okay. So why was that, and not just, why wasn't it a mistake? Why was it clearly erroneous? The clear error was that all the evidence that was introduced, including the letter to all states' board of directors in 206, approximately three years before the trial, we had asked the board of directors to get involved and to stop two practices that we believed were prohibited by the decision of this court in All that if a person is added to the policy as an insured, he has a right to clear and conspicuous notice of any reduction in coverage. If that does not occur, the older policy with greater coverage is afforded to the all state claims managers and adjusters to check when a claim is tendered to see whether or not there has been, in effect, a lawful termination of the contract. The duty of all state is to determine initially which policy applies. We proved at trial that they ignored that policy and the administrative code that implements that policy, and we proved at trial that in addition to having ignored it from 1988, they produced a witness, Dick Ray, that said it still is our practice not to comply with All State v. Phyllis. We also proved that they do not investigate claims or respond to claims in accordance with the administrative code. You'll recall that the administrative code requires an unbiased and fair counsel, the claims adjuster and the claims supervisor, that proves they did not investigate this case at all. When they got it, they did absolutely nothing. Dick Ray, the claims manager, said adjust this loss pursuant to the existing policy, AB 529, and don't investigate at all whether or not another policy is applicable. I believe it is critically important in this circuit, particularly since you ruled in 1988, that a policyholder is entitled to his rights under a policy that has not been terminated, and I believe that... Essentially, what they would have to do would be to go back into the history of the relationship and determine whether there had been any detrimental changes in the policy, and if so, whatever the requisite notice was. Yes. There's a specific form that I have put in the record that Susan Price sent to All States Litigation Center, one form that says, check your computer tapes to determine who's on the policy, and then they can determine, as she did, that the computer tapes show that my clients were added to the policy, and by stipulation, after discovery, All State admitted that it did not give notice to my clients. That is available... One thing that's a little weird about the Supreme Court's punitive damages cases is that, on the one hand, they say irreprehensibility depends on whether it's an isolated instance, but on the other hand, they say you're not supposed to rely on what happened with regard to other people. Yeah, but we're talking about an institutionalized practice that was confirmed, that was confirmed by Dick Ray on the stand, the claims manager, that says, we did not implement what FIBA said, and we don't plan to implement what FIBA said, and we asked, we asked the Board of Directors and the Audit Committee to implement what FIBA said. We asked, meaning we, the operative people asked? Oh, I see. We gave a letter to the Board of Directors informing them of this in 2006. I think it is critically important for Your Honors to make that distinction. I see I have 27 seconds left. Let me just raise this one issue. This was a trifurcated case. I believe that it is appropriate that, when there's a declaratory relief action, to permit the awarding of grant fees after the declaratory judgment is entered, and I believe this circuit can interpret 28 U.S. Code Section 2202 to permit that. A declaratory judgment is a declaratory judgment. It's not an award of damages. Grant fees are an award of damages. Correct. So how do you get grant fees out of a declaratory judgment? You get it as an incident pursuant to Section 2202 saying that you can go ahead and give any relief permitted by State law. And attorney's fees, once there's a finding that a tort occurred, there is, there is the right to award all relief, including attorney's fees. But that's damages. That's damages. Yes, it is. So you're saying that in a declaratory judgment case, you can award damages? Yes. So if I got a declaratory judgment that I committed a tort, I could, the judge could then start awarding me damages for the tort? Yes. You've ever seen a case like that? Not involving an insurance company or grant fees. I know. In general, have you ever seen a case like that in which, as an incident to a declaratory judgment case, you get tort damages? No. What I've got is a case that's saying that you can award complete relief and compensatory relief is granted. Compensatory relief meaning damages? I believe so. Meaning money? Money. I believe so. But doesn't that completely undermine the right to a jury trial and a damages action in a tort case? Yes. Not if you have a separate declaratory relief action. But there's a so that's so anybody can file a declaratory relief action and can do away with jury trials in civil cases? I don't think that's correct. Well, why not? Because in this case, in this case, the party stipulated that the judge would go ahead and determine. Well, but now you're backing into a completely different argument. Because they say you didn't stipulate that. In fact, they refused to stipulate. And it was only in the context of the jury situation that the statement was made. But it was after the fact and after you could have even tried it to the jury. And the judge seemed to buy that. She seemed to agree that, in fact, there had been no stipulation. That was her ruling. But whatever it is, it's a different argument than a declaratory judgment argument. Correct. Do I still have two minutes? No. Good morning, Your Honors. May it please the Court. My name is James Fitzgerald. My co-counsel, Tina Emery, is here as well. She's going to address the punitive damage issues. I'm going to address the coverage issues and the bad faith issues. I think I'd like to start off with actually addressing Judge Berzon's question. Do you have any understanding about the time you're going to divide, how it's going to be divided? We're going to split it about equally. So I'll be about seven, seven and a half minutes or so. Okay? What we believe controls on this coverage issue is the statute that the judge did not apply in the court below, which is Section 678. While the appellant here claims that they were an additional insured, and for purpose of this argument, we're not disputing that they were an additional insured, they're not What do you mean by it? I mean, you guys are all throwing that term around. I tried to figure out where it was coming from. And the best I could do is it came from one case, and that one case seems to use the term additional insured in a different way than the way you're using it. Does it come from anywhere else? Where does it come from? It's not in the policy. It's not in the statutes. Where's it coming from? Well, it actually isn't. The term named insured is in the statute, and it is in Section 678. I didn't ask you that. I want to know where the term additional insured comes from. Additional insured comes It's the normal usage in the insurance industry and has been for years, an additional insured. And it doesn't refer to people who are insured but not by name? That's correct. But this guy was insured by name. That's true. Sometimes they are by name, and sometimes they can be just included in the definition of insured. Okay. I understand. But they're telling me that if I agree that they were insured, that this add-on occurred, that's and apparently that was accepted, and it seems to have happened and there doesn't seem to be any dispute that it happened at this point, then what difference does the rest of it make? They're in the policy by name. But they're not an owner of the policy. That's a different story. But they're in the policy by name. But the named insured, named insured in the way statute is written on the insurance code, is the named insured is the person who owns the policy. They're the ones that are responsible for paying the premiums, et cetera. So, for example, a husband and wife are typically Could you tell me where that is in the insurance? Your briefs say nothing about this and, in fact, largely ignore the entire fact that they were added to the policy. I mean, it was a really bizarre thing to read your briefs because you couldn't find it anywhere. It was just kind of not there until some little part in the reply brief, I think. So they're there, as I understand it. They were put in by name. Right. That's why, if you go back and look at the insurance statutes, and specifically Section 678, it refers to named insured. There are other statutes that refer to just insured, but named insured has a particular meaning under the insurance code. Where? Okay. Where? Under Section 678. But where is the fact that it has a particular meaning other than somebody who was insured by name? It says named insured, and on the policy.  Well, this was a named insured. They were insured and they were named. No. They're insured, but they're not named insured. Not every person who's insured. Basically, the distinction is, is that somebody didn't type the name on the policy or put in a piece of paper that said, this person is also the owner of the policy. Is that the distinction? Yes. For example, if you could. Okay. But isn't the problem here that, you know, people were told that they had been added to the policy as actual insureds, and the piece of paper never got generated? Well, no. They were told that they were added as an additional insured. Well, I mean, that's a fact. They're already actually an insured by definition because to the extent that they were real estate management. You're ignoring all of this testimony, it seems to me, about, you know, the discussions that were had about I want to be an insured too, not just somebody who happens to be an employee of the insured and therefore is an additional insured. Right. I mean, wasn't there a basis for a fact finder to conclude that these people weren't just additional insureds, but actually were named insureds, even though Allstate didn't, or whatever the insurance company was called at the time, didn't actually type out the piece of paper? No, because actually it has to be a particular named insured. There has to be something like that. Where are you getting that from? I'm now looking at 678. I see that the words named insured are used throughout. I don't see where it's defined. It's not defined. That's correct. Right. It's not defined. So the ordinary meaning of named insured is somebody who was named an insured. They were named and they were insured. What's the problem? No, there's a distinction. Let me give you, by analogy. Now, where is the distinction? You think there's a distinction. How am I supposed to know there's a distinction? Where is it coming from? It's coming from normal usage in the insurance industry, and it always has been. That's why the insurance statutes use the term named insured, to specify and to give you an example. If you have, for example, let's say you have a person who's your housekeeper. You have a homeowner's policy, and you want that person, because they're in the house, to make sure that they're added, to be insured and protected. You put them on as an additional insured. That doesn't mean that that housekeeper is going to get all the notices, is going to be able to control coverage, because the person who controls the coverage is the person who buys the policy. They're named insured. That's the distinction. By the same token, the name would be additional insured. You could have a contractor who comes on to repair your kitchen, and he's added on as an additional insured by name. He doesn't become the owner of the policy. He's not entitled to coverage renewals or anything like that. Suppose he's put on there, and he changed the policy in a way that takes out his coverage. Wouldn't he have a good reason to want to know that he's no longer insured? No, because you control it as an additional insured. All you have agreed to with that contractor, for example, is you're an additional insured under my policy. He tells the contractor, don't you worry about anything. You're covered by insurance. The contractor says, well, put my name on the policy, so I'm sure I'm covered by the insurance. Then you change the terms of the policy, and he's no longer covered by the insurance. But those contractors aren't put on as named insureds, because that takes on a specific meaning to the insurance company. I assume you realize that you are talking from a set of understandings that unless they're incorporated in some legal place, we're not necessarily bound by it. I mean, or unless you put on evidence that this is what the statute means, because that's the common understanding. But as far as I know, there's none of this. It's just what you've been saying all along. But I don't know where it's coming from. Other than you're telling me it's the use in the industry. Is there a record about that in this case? Is there a trial record on that? Yes, as the way the experts testified. The experts testified that there's an understanding that the name insured in 678 has to mean X, because that's the common uses in the industry. Their own expert, in my recollection, has testified that they are not a named insured under the policy. They were an additional insured, but not a named insured. The experts distinguished between, in the industry, what a named insured is versus an additional insured. There is a clear distinction. The named insured is the owner of the policy. Now, if I might, in the few seconds I have left and before I turn it over, the issue of mortgagee insured, there is no such thing as a mortgagee insured. The policy never uses the term mortgagee insured. In fact, clearly, Mr. Dupont's ---- Sotomayor, tell me why this matters. We don't think it matters at all, because we think 678 is positive of the case. If it's not, the judge will always seem to rest coverage, therefore, on this mortgagee insured. But there is no such thing. The ---- in fact, it was very interesting, Mr. Balfour said that, and I quote here, he said, the all provisions incorporates Section 1 coverages. Section 1 is not, is the property section of the policy, which is the only section that the mortgagee is addressed in. Section 2 is the liability and the duty to defend portion. And that's why the mortgagee issue doesn't come into play in this case at all, because the mortgagee's interest is only as a security interest in the property, and up to the limits of the security interest that he has, he's protected only under Section 1, which is the property coverage if the house burns down or there's water damage or something like this. I need to go back to this named insured thing for a second. You referred to expert testimony. Does your brief cite where that is? Is the expert testimony that you referred to, the plaintiff's expert supposedly admitted that they weren't named, that they weren't the named insured, is that cited, is that discussed in your brief anymore? That's not a, that's, I don't think we have a citation for that, no. So is it discussed? I'm sorry? Is the testimony discussed whether you have a citation for it or not? In other words, the proposition that there was factual support in the record for the proposition that these people weren't the type of insureds that were entitled to notice, there was evidentiary support, is that discussed in your brief at all? I don't think that's discussed. I think in part because of what you said. I couldn't find it, I just wanted to make sure. I think in part just because of what you said, that they admitted that they were not a named insured. No, the real reason is because you didn't deal at all in your briefs with the whole fact that they were, in fact, added by name in some capacity or other to the insurance. You just ignored it. But I think, I think one of the problems with this is, and it goes back to, is the jury instructions as well. The judge did not instruct on Section 678. Did not, in fact, tell the jury what it was. I gather they think that there was a contractual obligation as well. Well, that's the problem. We don't know because the proper instruction wasn't given on Section 678. So what? At the time? Yeah. Does the appeal challenge the absence of that jury instruction? Yes. Okay. Yes. I think I should turn this over at this point to Ms. Emory. Thank you very much. Thank you, Justice. Good morning, Your Honors. It's my job to talk about punitive damages, and so I want to completely switch gears and even assume for the sake of argument that there is, that there was a breach of contract. Obviously, we don't believe that to be so. The question nobody has mentioned is whether this coverage dispute, any of these coverage disputes, mortgagee insured, additional insured, what have you, were reasonable, whether the plaintiffs are even entitled to tort damages. But I'm going to put that aside because the issue, as Judge Reinhart inquired, is punitive damages, jump directly to the question of punitive damages. I think the important thing to remember in a case such as this one is now that we're talking about punitive damages, we are beyond compensation. The plaintiffs, according to the U.S. Supreme Court and the California Supreme Court and this Court, have been fully compensated by the compensatory damage award. The only question for purposes of punitive is whether what Allstate did here was so bad, so egregious, that it warrants, as they used to be called, vindictive damages solely for the purpose of punishing it, not compensation anymore. Now, what is it that the plaintiffs suggest Allstate did that was so bad? Well, first of all, they argued, and they argued ad nauseum below, that we failed to defend a mortgagee and, indeed, did raise this whole business about mortgagee insured when, as I think we hopefully showed, there is no such animal, when the policy takes great pains to differentiate between the rights of mortgagees in Section 1 and the rights of insured persons entitled to a defense. Council also says that Allstate did not give MBM notice of the new policy form. As Mr. Fitzgerald was discussing, it is undisputed that 678 of the insurance code does refer to named insureds. Throughout the insurance code in other places, and I think we cited some of them, at least, in our brief, the unmodified word insured is used. I think what the insurance code scheme, for example, 11580, there's a discussion in a case we cited called, I believe it's Gorham, which talks about the distinction between additional and named insured. The one case about this, the Kolar case, which I gather was well before anything happened here, the says that additional insured are the named who do not do not appear on the policy, and the insurance doesn't know. An additional named insured, on the other hand, would be entitled to notice because she's named in the policy. Additional named insureds generally are persons who were added as insured after the policy issued. Isn't that exactly what happened here? Well, there is a distinction between the Mr. Fitzgerald was trying to point out. We're talking about the person who has the right to drive the boat. Well, I'm reading your case that seems to say that that's not relevant for purposes of notice. But, Your Honor, Gorham, the Gorham decision says just the opposite. It says, look, it recognizes, we cited it, G-O-R-H-A-M, I believe. It specifically says there is a distinction. The Court refused to rewrite, it wasn't 678, but it was the commercial or premium finance version of the notice statute, and they all track the same language. And that Court said, we refuse to rewrite the words named insured to take out the word named and just say insured, because it is impossible. But they were named. You're not taking out the word named. They were named. You are trying to add something to the language of the statute that isn't in the statute. Right? They were named and they were insured. No, Your Honor. With respect, I think that what, you know, the plaintiffs are trying to do is take  But I don't want to get off the punitive bandwagon and wind up --- They wrote a letter and said, we want to be in the policy by name. No, they said as additional insureds. But by name. And they were, in fact, added by name, and the record showed them there. I think, Your Honor, what the letter said was, we want to be added as additional insureds, and even the plaintiffs recognized thereby, they recognized that there was a distinction. I know, and I'm a little bit concerned about getting back to going backwards. Well, you brought it up. That's why I brought it up. I haven't talked about the amounts of punitive damage. Let me raise one thing about the Fibus case, Allstate v. Fibus. You're going to be out of facts. Fibus did not hold that a carrier has to automatically go back and review every policy. Now, with respect to the amount, the suggestion that, I mean, the U.S. Supreme Court in Campbell, an insurance bad faith case, very egregious facts, said one-to-one is probably the maximum when you have substantial compensatory damage. We've got a million-dollar compensatory award here. We had a million dollars of motion distress in Campbell, and the U.S. Supreme Court said one-to-one is probably the absolute max. What the plaintiffs have tried to do is take the reprehensibility factors and shoehorn their way into them. The purpose of the amount analysis is designed to figure out how bad is this kind of conduct in comparison to other conduct, where there is no physical harm. They try to say there's physical harm. The case law clearly says emotional distress is not physical harm. Where there was no disregard of health or safety, they try to say the standard is Allstate disregarded our legal rights. There's no suggestion in these cases that we disregard or an insurance company in denying a claim disregards an insurer's health or safety. Alitoson How do you deal with a case like Southern Union, you know, where there was a reduction, but it was to three-to-one, and it didn't involve physical harm, and that's a case out of this Court that's post-State Farm? Well, when you're dealing with these numbers, I mean, this is a balancing test. Well, but you just said that the numbers were important. You just said that under State Farm, it's for one-to-one is the touchstone. I mean, there's a case from two years ago from this Court that says, you know, three-to-one is okay. Well, there will be outliers, Your Honor. If, for example, you have, I think Campbell says, if you have a very small out of farm, it would have been horrible. There's other post-State Farm cases from this Court that apply ratios bigger than three-to-one. So maybe the three-to-one is the outlier. Well, Campbell says, I think if you look at the case law, most of the cases that have the bigger ratio numbers occur immediately after Campbell when courts hadn't quite gotten to the point of understanding the analysis. Campbell was what, 2001? Campbell was 2003, I believe. 2003. So you're saying that by 2005, when the Ninth Circuit decided Planned Parenthood, 2006, Exxon Valdez, and 2009, Southern Union, they hadn't quite figured out what Campbell meant yet? Well, Your Honor, I think if you look at AmeriGraphics. Pardon me? Do you know what the award was from Campbell on remand? The award on remand, ultimately, the Utah Supreme Court knocked it to 9 million, which was nine-to-one. Nine-to-one, yeah. So they read Campbell, in the very case, as permitting a lot more than one-to-one. They read it as permitting nine-to-one. Well, but I, and let's not forget, Your Honor, that there is no evidence of, unlike Campbell, there's no evidence of recidivism here. There's no evidence whatsoever that Allstate did anything like this, took this kind of a position to any other insured. There's no evidence that any other insured exists, for all you can tell from this record, the purpose of these reprehensibility factors is to decide if this was a company that knew what it was doing was wrong and did it, and did it to other people, did it over and over again. That is a factor to consider in deciding, how bad is this? How much does this person, this entity, need to be punished because they're just not getting the message? There's no suggestion that any mortgage-insured or... Doesn't State Farm say that's why you're not supposed to take into account? Because you shouldn't be punishing them for what happened in a different case? Not exactly. If the Court's referring to the Williams v. Philip Morris case, what it says is you cannot punish for the other conduct. Pardon me? In State Farm, where they were very critical of taking account of out-of-State cases. It seems to be limited to that State, and they didn't like other, taking into account other types of insurance. Well, Your Honor, I understand the question. Campbell said that the other evidence with, you know, that was not related to the Campbell claim had nothing to do with the Campbell first-party claim. It was the irrelevant evidence. For example, they introduced evidence of how State Farm had treated its employees in employment discrimination cases or third-party cases. But their basic point, as I understood it, was that if you take into account what's happening in other cases, then you can end up with multiple punitive damage awards for the same behavior in different cases. So it shouldn't be doing that. Well, I think the distinction, as I understand Campbell and Williams, which is the case that came along and said you cannot punish in this case, the Williams case, the smoker case, for what Philip Morris did to other smokers. Right. But you can consider it, Williams says that, you can consider it, because if this company has done it over and over and over again, it deserves more punishment in this particular case. And we will worry later in the next smoker's case about whether it's getting to be multiple punishment. I think that is the distinction. And that comes through very clearly when you go back and read Williams v. Philip Morris. What the Court is saying, I think pretty plainly, is that you may consider evidence of other acts that are similar to the act committed in this particular case with respect to this particular plaintiff, but you cannot punish for them. That punishment belongs in the court's order. Well, the U.S. Supreme Court, you know, it's academic because there is no evidence of other acts in this case. There is no evidence of anything that Allstate did with respect to any other insurer. On the FIBIS issue, the suggestion that, you know, Allstate had a policy of blind eye, not looking at prior policies, FIBIS doesn't say that an insurance company, any time a claim is made, this was in what, the early 2000s, the old policy had been gone for five years. FIBIS never said you have to go back and search through every possible policy and look for whether it was covered. When Allstate adjusted this claim, NBM never suggested, oh, we're entitled to coverage under the old form. NBM never said, oh, we didn't get notice, and therefore, we should be entitled to coverage under the old form. And all the adjuster, the claims manager, said you're five and a half minutes over. I can give you another minute, but that's it. All the adjuster said was, you know, we don't routinely go back and look at old policies unless somebody says there's a reason to, unless there's somebody said, well, we didn't get notice of the change. FIBIS did not say you have to go back each and every time. You know, the suggestion, it's what NBM is doing here is trying to establish a hindsight test by saying, Allstate, you adjusted this claim under the form, and by the way, there's no coverage under, you know, the old form because of the arising of the coverage grant. But FIBIS never said you have to go back and look at every single policy, prior policy, however old, in order to determine coverage. NBM is saying, hindsight, we didn't tell you, Allstate, when you were adjusting this claim that the old policy applied. We let you adjust it under the new one. But after they filed the bad faith suit was the first time that NBM ever suggested that the old policy form might apply. And I suggest that that is a hindsight test, that punitive damages should be reserved for the kinds of conduct in the cases where there is truly despicable situations of an insurance company ignoring the law. Sotomayor, before you sit down, will you tell me again the name of the case that you say that you cited that's contrary to Kotler? Looking in your brief, the issue cited for this proposition is actually Kotler, and you leave out the one sentence that matters, which, if I was determining bad faith, I would say is really kind of a questionable way to write a brief. So what case are you looking at? I apologize if that was an oversight, Your Honor. It wasn't an oversight. You were relying on Kotler for exactly the opposite proposition that Acton states. It explains the difference. GORHAM. I think GORHAM. If it's not, I'll check it out. But if you look at Kotler, Kotler actually said in the policy somewhere, they said, you know, this was, I think, a landlord who was added as an additional insured. The policy said we will endeavor to give you notice, made a representation that they would give notice. The custom and practice in the industry, as the evidence showed, and even the trial judge recognized, is that named insureds are entitled to notice. The owner of the policy --- Could you please submit that citation, because I'm not finding it in your brief. GORHAM. Certainly. I'm not finding it in the brief, so you're right. Okay. And that's the end of the argument. Thank you. Thank you. Counsel, we'll give you a -- well, we'll try to keep it down to two minutes, but we gave your opponents considerably more than that. Thank you, Your Honors. We were not supplied with any citations that calls into question the Cotler case. I think the Cotler case is very clear. It says, as I believe the panel understands, that if a person asked and is approved to be added to a policy, they're named insured and entitled to notice, and that's the distinction that Justice Johnson made in Cotler, and that's the law. Is there, in fact, a record with regard to the use of this term in the industry and what it -- therefore, what it means either in the policy or in the -- first of all, is the term used in the policy named insured? No. The terms that's used in the policy are insured persons and insured. And there is a notice requirement in the policy? Yes. There's a notice requirement both to the mortgagee, 10-day notice if the policy's not continued, and there's a notice provision in the policy of 30 days to an insured. And- Why does 678 even matter? It does not matter. It is a red herring designed to go ahead and create error where none occurred. Everyone agreed. And to put to rest this whole notion that he wasn't added to the policy, we put before you two letters by the claims adjuster and the coverage counsel. Each said that my client was added to the policy. And as Judge Berzon said, when the letter was sent confirming the addition, the three entities that were actually listed were identified in the letter. And you have, after the 329.95 letter was sent confirming this, you have a binder issued by Mr. Haddad, the authorized all-state adjuster. You have a premium notice going out. You have a notice going out saying that the policy has been amended, effective 329.95. And you have, when the lawsuit was filed, you have a request for a certified copy of the applicable policy that was not supplied until after they had filed their motion for summary judgment. And they threw their own coverage counsel and claims manager and claims adjuster under the bus so they could go ahead and resurrect this argument that there's a distinction between name to the policy and that you have to use magic language other than add me to the policy. All right. One more question. Is there any evidence in the record that all-state had this practice or was guilty of the same offense in any instance other than this? That is denying addition to the policy? Whatever it is that you say. There's evidence by Dick Ray that says that they do not go ahead and check prior policies. There's evidence in the record from Mr. Haddad, Susan Price, the adjuster, and Dick David Prager, the claims attorney, coverage counsel, that said and authenticated their letter stating that my clients had been actually added by name to the policy. Those three, those facts are in the record. That shows that there were other similar incidents with respect to other insured people. No. No. So the only, as far as punitive damages are concerned, it's only this one occurrence. Yes. Thank you, counsel. Thank you. Excuse me, Your Honor. May I just try the Gorman citation now? Yes. Sure. Would you give a copy to the court? All right. Is it in your brief? Do you know where it is in your brief? Maybe you could write that down, too. If you give it to her, give her that, too. All right. The court, the case just arguably submitted. The court will stand in recess briefly.
judges: Kennelly, Reinhardt, Berzon